**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GARY NELSON | Civil Case No: _____ |
| Plaintiff, | |
| v. | **DEMAND FOR JURY TRIAL** |
| NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE SERVICING | |
| Defendant(s). | |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1.      NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE SERVICING (hereinafter "SHELLPOINT") violated 15 U.S.C. § 1692 *et seq*., the Fair Debt Collection Practices Act (hereinafter "FDCPA"), as well as Pennsylvania state law, which prohibits debt collectors from using false, deceptive and misleading representations as well as unfair and unconscionable conduct in connection with the collection of any debt.

**JURISDICTION AND VENUE**

2.      Jurisdiction arises and is proper under 15 U.S.C. § 1692(k), 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

3.      Venue is proper in this district under 28 U.S.C. §1391(b) and 15 U.S.C. § 1692k(d) because the acts of the Defendant that give rise to this action occurred, in substantial part, in this district.

**DEFINITIONS**

4. As used in this complaint, the terms "creditor," "consumer," "debt" and "debt collector" are as defined at 15 U.S.C. § 1692a.

## PARTIES

5. Plaintiff Gary Nelson is a natural person, residing in Bucks County, Pennsylvania at 1217 Shetland Court, Yardley, PA 19067, and is, at all times herein, a "Consumer" as defined by 15 U.S.C. § 1692a(3).

6. SHELLPOINT is a professional business corporation with a place of business at 75 Beattie Place, Suite LL202, Greenville, SC 29601. SHELLPOINT is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692(a)(6) because it regularly collects or attempts to collect debts owed or asserted to be owed to another and it obtained the servicing rights to Plaintiff's mortgage—the debt that is the subject of this suit—after it was allegedly in default.

## STATEMENT OF FACTS

7. On or about January 17, 2003, Plaintiff gave a non-purchase money second mortgage loan on his home at 1217 Shetland Court, Yardley, PA 19067 to Cendant Mortgage Company, in the original principal amount of $297,955.00.

8. By signing the mortgage, Plaintiff did "grant and convey" rights in his home to Cendant Mortgage Company to secure repayment of the mortgage note. The mortgage at Section 22 provided for the release and termination of the estate conveyed to Cendant Mortgage Company upon all payment of all sums secured by the mortgage.

9. In agreeing to the mortgage loan and by signing the mortgage and mortgage note, Plaintiff justifiably relied on the representations during the sale of the loan, and those contained in the mortgage and note that he would only be required to repay the principal, interest and other amounts as set forth in the mortgage and note.

10. Servicing of the mortgage was subsequently transferred to Ditech Financial.

11. Ditech Financial filed for bankruptcy in December 2017 but continued to service Plaintiff's home loan.

12. On or about January 9, 2019, Ditech Financial claimed that Plaintiff's homeowner's insurance policy had lapsed and Ditech placed a forced-placed insurance policy on Plaintiff's home.

13. On January 9, 2019, Ditech billed Plaintiff $1,028.01 for lender-placed homeowner's insurance premiums.

14. Plaintiff promptly disputed the escrow charges with Ditech and provided proof to it that his homeowner's insurance coverage had not lapsed.

15. Plaintiff additionally hired counsel, and on January 17, 2019, Plaintiff, through his counsel, served upon Ditech a Qualified Written Request ("QWR") under RESPA disputing the lender-placed premiums on his account. A true and correct copy is attached as **Exhibit A**.

16. In February 2019, Ditech Financial again faced insolvency and again filed for bankruptcy.

17. Ditech, apparently more concerned with its own insolvency than its customers' homes, failed to investigate or even respond to Plaintiff's written request.

18. Despite receipt of the foregoing QWR from Plaintiff through his counsel and lack of any response from Ditech, Ditech Financial refused to move the insurance premium from his account and increase his monthly payment as to include monthly escrow charges in order to recoup the premiums from Plaintiff.

19. On December 16, 2019, Ditech notified Plaintiff that SHELLPOINT would start servicing his loan effective January 1, 2020. (A true and correct copy is attached as **Exhibit B**).

20.    SHELLPOINT continued to charge Plaintiff's loan account for forced-placed insurance, despite Plaintiff's foregoing dispute and despite his providing proof of coverage.

21.    Plaintiff again disputed these charges by phone and through written disputes and SHELLPOINT began an on-again off-again campaign of returning payments made by Plaintiff in a recurring pattern wherein SHELLPOINT returned payments to Plaintiff despite the fact that the loan was not accelerated, Plaintiff disputed SHELLPOINT's failure to apply his payments citing the improper escrow deficit on the loan, and then SHELLPOINT resumed accepting payments for a few months, but failed to remove the improper escrow deficit from the loan thereby causing the pattern of SHELLPOINT returning then accepting Plaintiff's payments to repeat.

22.    In or around April 2021, in an effort to end the escrow dispute once and for all, Plaintiff filed suit against SHELLPOINT based on the improper escrow charges. The case was filed in Pennsylvania state court and indexed at Nelson v. SHELLPOINT Mortgage Servicing, No. MJ-07111-CV-0000101-2021. A true and correct copy of the complaint is attached as **Exhibit C**.

23.    The complaint alleged violations of the Unfair Trade Practices and Consumer Protection Law based on the improper escrow deficit claimed by SHELLPOINT.

24.    On May 24, 2021, Judgment was granted in favor of plaintiff and against SHELLPOINT for $12,180.25 for the improper escrow charges.

25.    SHELLPOINT timely received the judgment and had a right to a de novo appeal within thirty days but failed to take any action to appeal the judgment.

26.    After the judgment was final, Plaintiff transferred the judgment to the Bucks County Court of Common Pleas and notice of the transfer was served on SHELLPOINT by Plaintiff's counsel and by the Court itself. Despite actual knowledge of the judgment, SHELLPOINT took no action to strike, open or otherwise contest the judgment.

27.    The judgment was subsequently transferred to South Carolina (where SHELLPOINT is headquartered) and again served on SHELLPOINT.

28.    Despite actual knowledge of the judgment in South Carolina, SHELLPOINT took no action to strike, open or otherwise contest the judgment.

29.    Despite Plaintiff's numerous prior written disputes with SHELLPOINT and the final judgment in favor of Plaintiff, SHELLPOINT continued to demand the improper escrow deficit from Plaintiff.

30.    On January 17, 2022, Plaintiff was informed that servicing of the loan would transfer to Gregory Funding, LLC ("Gregory"), effective January 7, 2022. (A true and correct copy is attached as **Exhibit D**).

31.    Gregory not only maintained the improper escrow charges on Plaintiff's loan account, but also began charging Plaintiff's loan account interest on the improper escrow charges.

32.    On or about February 11, 2022, Plaintiff subsequently disputed the escrow charges in a QWR letter addressed to Gregory.

33.    During its investigation, Gregory contacted SHELLPOINT to inquire about Plaintiff's dispute.

34.    SHELLPOINT provided Gregory with copies of the complaint and judgment that it had been served with in the litigation, **Exhibit E.**

35.    In addition, Gregory conducted a title search of the property through its counsel. This search revealed the judgment in favor of Plaintiff and Gregory's counsel highlighted this in their report.

36. Despite being provided actual copies of the complaint and final judgment, on or about April 7, 2022, Gregory sent Plaintiff a "Final Response" to Plaintiff's QWR claiming that "SHELLPOINT… [has] no knowledge of such a judgment."

37. Gregory failed to conduct a reasonable investigation into Plaintiff's QWR dispute by failing to remove the improper escrow charges, the interest charges thereon, and other fees incurred by the past collection attempts regarding the improper escrow charges.

38. As a result of Gregory's failure to conduct a reasonable investigation into Plaintiff's QWR dispute, Gregory referred Plaintiff's loan to the Padgett Law Group for foreclosure and, despite notice of the judgment to Padgett, a foreclosure action was filed against Plaintiff on July 18, 2022.

39. As a result of the Gregory's failure to reasonably investigate and its attempts to collect amounts that were not due, Plaintiff filed a lawsuit against Gregory and Padgett in the United States District Court for the Eastern District of Pennsylvania, case number 2:23-cv-02746-JS alleging one count of violations of the Fair Debt Collection Practices Act and one count of violations of the Real Estate Settlement Procedures Act ("the Gregory Federal Action").

40. During the pendency of Nelson's suit against Gregory, the servicing of the mortgage loan was once again transferred to SHELLPOINT beginning in or around June 2024.

41. On June 6, 2024, SHELLPOINT sent statements to Nelson in an attempt to collect the mortgage debt from him, **Exhibit F.**

42. In addition to continuing Gregory's attempt to collect the improper escrow deficit and related charges noted above, SHELLPOINT added "prior servicer cost[s]" as well in the amount of $18,096.65.

43. The "prior servicer cost[s]" added by SHELLPOINT included $17,536.00 in alleged "legal costs".

44. Based upon records from Gregory obtained in the Gregory Federal Action, the overwhelming majority of the "legal costs" demanded by SHELLPOINT were not related to any attempts to enforce any terms in the mortgage documents; rather, these were fees incurred by Gregory in defending Plaintiff's FDCPA and RESPA claims against it in the Gregory Federal Action.

45. Neither Gregory nor SHELLPOINT have any contractual right under Plaintiff's note and mortgage to seek collection of Gregory's litigation costs incurred in defending the Gregory Federal Action.

46. Additionally, neither the FDCPA nor RESPA authorizes or empowers Gregory or SHELLPOINT to attempt collection of Gregory's attorney fees prior to any ruling or other disposition in the case.

47. In its June 6, 2024, mortgage statement to Plaintiff and its subsequent statements, SHELLPOINT has made the payment of these improper and unlawful "legal costs" a condition of reinstatement of or payment towards the loan. In other words, SHELLPOINT has affirmed that it will not allow the termination of the mortgage and reconveyance of Plaintiff's home back to Plaintiff without the payment of these improper and illegal fees.

48. The above-detailed conduct of SHELLPOINT constitutes harassment of Plaintiff in an effort to unfairly and deceptively collect a debt without a legal basis in the terms of the mortgage and note or other legal basis.

49. Plaintiff has suffered actual damages as a result of SHELLPOINT's debt collection tactics to force payment from him of the foregoing illegal and improper charges, including, but not

limited to, the inability to recover title to his home without payment of the illegal fees, the ongoing threat of foreclosure and sale of his home without the payment of these illegal fees, additional fees and charges added by SHELLPOINT to his loan (such as occupancy inspection fees), and anger, anxiety, emotional distress, fear, frustration, humiliation and embarrassment.

50.     SHELLPOINT's illegal abusive collection tactics set forth above were the direct and proximate cause of Plaintiff's actual damages set forth above.

**COUNT I – Violations of the Fair Debt Collection Practices Act**

51.     Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

52.     SHELLPOINT is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6) in relation to the Plaintiff since it acquired its collection interest when the loan was alleged to have been in default as a result of its servicing actions described herein.  SHELLPOINT also seeks to collect on the behalf of others—the loan's owner, Barclays Mortgage Trust 2021-NPL1 through its trustee, U.S. Bank N.A.—who hired it to serve as its collector.  For these reasons, and because SHELLPOINT's business materially involves the collection of mortgage debts acquired in default on behalf of others, SHELLPOINT is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

53.     Plaintiff purchased and lives in the home as his family residence; therefore, the mortgage debt is a "debt" as defined by 15 U.S.C. § 1692a(5) in that it arose out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

54.    Defendants collect, and attempt to collect, defaulted mortgage debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of the loans' owner(s) using the U.S. Mail, telephone, and Internet.

55.    The Debt Collection letters and Statements sent to the Plaintiff are "communications" as defined by 15 U.S.C. § 1692a(2).

56.    Defendants violated the FDCPA with respect to Plaintiff as follows:

a.    Engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. § 1692d;

b.    Using a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, which constitutes a violation of 15 U.S.C. §§ 1692e, 1692e(2),  1692e(2)(A), 1692e(2)(B) and 1692e(10);

c.    Using unfair or unconscionable means to collect or attempt to collect any debt, which constitutes a violation of 15 U.S.C. §§ 1692f and 1692f(1)

57.    The foregoing acts of SHELLPOINT constitute numerous and multiple violations of the FDCPA.

58.    As a direct and proximate result of SHELLPOINT's actions in violation of said statute, the Plaintiff has suffered statutory and actual damages, including but not limited to, mental and emotional suffering, fright, anguish, shock, nervousness, anxiety, humiliation and depression.

### COUNT II – Violations of the Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law

59.    Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

60.     The mortgage debt as stated above is a non-purchase money second mortgage and, therefore, is a "debt" as that term is defined by Pennsylvania's Fair Credit Extension Uniformity Act, 73 P.S. § 2270.3.

61.     SHELLPOINT is not a creditor, but acts on behalf of creditors engaging or aiding directly or indirectly in the collections of debts and, therefore, SHELLPOINT is a "debt collector" as that term is defined by 73 P.S. § 2270.3.

62.     As noted in Count 1 above, SHELLPOINT's conduct constitutes numerous and multiple violations of the FDCPA, 15 U.S.C. § 1692 et seq.

63.     In accordance with Pennsylvania law, SHELLPOINT's violations of the FDCPA as a debt collector "shall constitute an unfair or deceptive debt collection act or practice. . . . " 73 P.S. § 2270.4(a).

64.     By operation of Section 2270.5 of the FCEUA, SHELLPOINT's unfair and deceptive conduct "shall constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law." 73 P.S. § 2270.5.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demands trial by jury on all issues so triable.

## PRAYER

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.     Awarding Plaintiff statutory damages;

2.     Awarding Plaintiff actual damages;

3.     Awarding Plaintiff treble damages;

4.    Awarding pre-judgment interest;

5.    Awarding post-judgment interest.

6.    Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses; and

7.    Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: August 23, 2024

*/s/ Robert P. Cocco*
Robert P. Cocco, Esq. (I.D. No. 61907)
Law Offices of Robert P. Cocco, P.C.
1500 Walnut Street, Suite 900
Philadelphia, Pennsylvania 19102
(215) 351-0200 telephone
(215) 827-5403 facsimile

*/s/ Sean P. Mays*
Sean P. Mays, Esq. (I.D. No. 307518)
The Mays Law Firm, P.C.
65 W. Street Road, Suite B102
Warminster, PA 18974
(215) 792-4321 telephone and fax